IN THE UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF OHIO

EASTERN DIVISION

| | | |
|---|---|---|
| ZABE JENKINS, | ) | CASE NO. 1:21-CV-01255-CEF |
| | ) | |
| Plaintiff, | ) | JUDGE CHARLES E. FLEMING |
| | ) | |
| | ) | |
| v. | ) | MAGISTRATE JUDGE |
| | ) | JENNIFER DOWDELL ARMSTRONG |
| KURT DAHLBY, *et al.*, | ) | |
| | ) | **REPORT AND RECOMMENDATION** |
| Defendants, | ) | |

## I.  INTRODUCTION

*Pro se* Plaintiff Zabe Jenkins ("Plaintiff") filed this prisoner civil rights action under 42 U.S.C. § 1983 against Mansfield Correctional Institution ("MANCI") Warden Tim McConahay ("McConahay"), MANCI Institutional Inspector Lisa Booth ("Booth), MANCI Captain Kurt Dahlby ("Dahlby"), and the Ohio Department of Rehabilitation and Corrections ("ODRC") (collectively, "Defendants"). In the Complaint, Jenkins asserts claims of: (1) excessive use of force in violation of the Eighth Amendment; (2) deliberate indifference to his medical needs in violation of the Eighth Amendment; (3) infringement of his free exercise of religion in violation of the First Amendment; (4) failure to investigate his appeals/grievances of his alleged assault; and (5) state tort law claims of physical and emotional distress. Defendants moved to dismiss this complaint on November 17, 2021. (ECF Doc. 6). Plaintiff filed a memorandum in opposition to the motion to dismiss on March 10, 2022. (ECF Doc. 11). Defendants filed a reply brief on March 17, 2022.

1

(ECF Doc. 13). Because Plaintiff has stated some claims upon which relief can be granted, I recommend[1] that the Court GRANT in part and DENY in part Defendants' Motion to Dismiss Plaintiff's Complaint.

## II.    BACKGROUND

Plaintiff's *pro se* Complaint sets forth the following allegations. On February 3, 2020, Plaintiff was an inmate at Mansfield Correctional Institution. (*See* ECF Doc. 1, PageID#3). Plaintiff alleges that Warden Tim McConahay has a policy to term any religious fast as a hunger strike. (*Id.*) Because of this classification, Plaintiff's security status was raised from limited privilege to restrictive housing to constant/suicide watch status. (*Id.*) On February 3, a few hours after release from constant/suicide watch status, Plaintiff's status was again enhanced to constant/suicide watch. (*Id.*)

On February 3, Plaintiff complied to being cuffed behind his back and escorted to an empty cell. (*Id.* at 4; ECF Doc. 1-1, PageID#10). Once in the cell, Plaintiff states that he sat on the floor due to exhaustion. (*Id.*) While explaining to an unnamed officer and Lieutenant Stewart that he was not experiencing suicidal thoughts or intentions, Plaintiff began to experience chest pain and shortness of breath. (*Id.*) Medical staff was called to assist him. (*Id.*) Nurse Glass took his blood pressure and pulse. (*Id.*) After doing so, Glass allegedly stated to Plaintiff that she would charge Plaintiff's account $3. (*Id.*)

When the door closed, Dahlby instructed Plaintiff to strip out of his clothes, although Plaintiff was still cuffed behind his back. (*Id.*) After looking in the direction of Dahlby, Plaintiff

---

[1] This matter was before Magistrate Judge William H. Baughman, Jr. pursuant to an order of reference issued by Judge J. Phillip Calebrese on November 2, 2021. That order referred the case for general pretrial supervision. Implicit within that order of reference is the obligation to file a report and recommendation on any case-dispositive motion. Due to Magistrate Judge Baughman's retirement, this case was referred to the undersigned pursuant to General Order 2022-14.

was immediately hit in the face by multiple blasts of pepper spray. (*Id.*) As a result of the pepper spray, Plaintiff was "blinded, burning, and choking". (*Id.*) Plaintiff alleges that - still handcuffed – he rolled on the ground to avoid assault before a boot stepped onto his spine. (*Id.*) Pinned to the ground, another officer ripped him from the floor before the boot was released from his back. (*Id.*) Dahlby and an unnamed officer dragged Plaintiff outside and dropped him. (*Id.*) Plaintiff's spine "click[ed]." (*Id.*)

Dahlby and an unnamed officer then snatched Plaintiff from the ground and locked him in the empty cell where Plaintiff had been previously pepper sprayed. (*Id.* at 5). Plaintiff alleges that he immediately began to choke because the pepper spray chemicals "overwhelmed" the cell and air. (*Id.*) To get air, Plaintiff stuck his mouth through the cuff port. (*Id.*)

After this incident, Plaintiff alleges that he was finally allowed to uncuff and take off his clothes before being cuffed again. (*Id.*) He allegedly collapsed on the floor unable, to breathe or sit upright. (*Id.*) When the door opened, the officers dragged him from the floor and one of the officers "aggressively rake[d]" his hand across Plaintiff's genitals, which allegedly resulted in a scratch that required treatment at a hospital. (*Id.*)

Plaintiff states that he was left in a watch cell naked, without being treated for his injuries or decontaminated from pepper spray. (*Id.* at 6).  Plaintiff alleges that the watch cells are kept at a much colder temperature than any other cell, so he was "freezing, burning of pepper spray, in excruciating pain, and sleep deprived." (*Id.*)

Plaintiff alleges that Dahlby received and was later charged to investigate a prior incident of prison staff assaulting Plaintiff. (*Id.*) Plaintiff maintains that Dahlby and Booth "purposely mishandled" that investigation. (*Id.*) Finally, Plaintiff states that the Defendants "deliberately fumbled" the investigation of this alleged assault. (*Id.*)

3

### III.    STANDARDS OF REVIEW

### A.  12(B)(6) – FAILURE TO STATE A CLAIM TO RELIEF

The Sixth Circuit has recognized that *pro se* pleadings are liberally construed. *Williams v. Curtin*, 631 F.3d 380, 383 (6th Cir. 2011). Federal district courts, however, are required to review any complaint "in which a prisoner seeks redress from a governmental entity or officer or employee of a governmental entity," and to dismiss before service any such action that the court determines: (1) is frivolous or malicious; (2) fails to state a claim on which relief can be granted; (3) or seeks monetary relief from a defendant who is immune from such relief. *See* 28 U.S.C. § 1915A; *Hill v. Lappin*, 630 F.3d 468, 470 (6th Cir. 2010). To survive a dismissal for failure to state a claim, a complaint must contain sufficient factual matter, accepted as true, to state a claim for relief that is plausible on its face. *Hill*, 630 F.3d at 471 (holding that the dismissal standard articulated in *Ashcroft v. Iqbal*, 556 U.S. 662 (2009) and *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544 (2007) governs dismissals for failure to state a claim under §§ 1915(e)(2)(B) and 1915A). Significantly, the plaintiff's "[f]actual allegations must be enough to raise the right to relief above the speculative level … on the assumption that all the allegations in the complaint are true (even if doubtful in fact.)" *Twombly*, 550 U.S. at 555.

### B.  12(B)(1) – LACK OF SUBJECT MATTER JURISDICTION

Defendants primarily seek dismissal of Plaintiff's Complaint under Rule 12(b)(6). Citing Rule 12(b)(1), they also request dismissal against Defendants in their official capacities for lack of subject matter jurisdiction based upon Eleventh Amendment immunity, to the extent Plaintiff's claims against Defendants seek money damages. Although the State has not filed a Rule 12(b)(1) motion in this action, the Court is permitted to raise the issue of subject matter jurisdiction *sua sponte*. *See Diversified Emp. Sols. Inc. v. Pawloski*, 790 F. Supp. 2d 655, 656 (N.D. Ohio 2011).

4

The standard of review of a 12(b)(1) motion to dismiss for lack of subject matter jurisdiction depends on whether the defendant makes a facial or factual challenge to subject matter jurisdiction. *Wayside Church v. Van Buren Cnty.*, 847 F.3d 812, 816-17 (6th Cir. 2017). A facial attack "questions merely the sufficiency of the pleading." *Rote v. Zel Custom Mfg. LLC*, 816 F.3d 383 (6th Cir. 2016) (internal quotations and citations omitted). In reviewing the facial attack, courts must "accept all allegations as true." *Ohio Nat. Life Ins. Co. v. U.S.*, 922 F.2d 320, 325 (6th Cir. 1990). To survive a facial attack, the complaint must contain a short and plain statement of the grounds for jurisdiction. *See Rote*, 816 F.3d at 387.

A factual attack, on the other hand, "raises a factual controversy requiring the district court to 'weigh the conflicting evidence to arrive at the factual predicate that subject-matter does or does not exist.'" *Wayside Church*, 847 F.3d at 817 (quoting *Gentek Bldg. Prods., Inc.*, 491 F.3d 320, 330 (6th Cir. 2007)). When subject matter jurisdiction is challenged, plaintiff bears the burden of proving jurisdiction. *Rogers v. Stratton Indus.*, 798 F.2d 913, 915 (6th Cir. 1986).

Here, Defendants make a facial attack. An assertion of sovereign immunity may sometimes be considered a factual attack, but "here the nature of the attack is more facial because the motion 'does not assert a need to examine the truthfulness of Plaintiff's allegations in order to determine the existence of subject matter jurisdiction.'" *Cedar Lane Farms, Corp. v. Besancon*, 2017 WL 1155564, at *2 (N.D. Ohio Mar. 28, 2017) (quoting *Graber v. Metro. Life Ins. Co.*, 855 F. Supp. 2d 673, 676 (N.D. Ohio 2012)). Because Defendants argue in their Motion to Dismiss that Plaintiff's Complaint "seeks to recover money from the state treasury by suing the ODRC and Defendants in their official capacity"—a claim that is barred by the Eleventh Amendment, Defendants are attacking the legal sufficiency of the Complaint rather than the facts. (ECF Doc. 1,

PageID#6). Therefore, this Court will analyze Defendants' arguments as a facial attack under Rule 12(b)(1) for lack of subject matter jurisdiction.

Upon review, I recommend that Defendants' Motion to Dismiss be GRANTED in part and DENIED in part for the reasons discussed below.

### IV.     ANALYSIS

#### A.  Eleventh Amendment Immunity

Defendants argue they are entitled to dismissal under Fed. R. Civ. P. 12(b)(1) for lack of subject matter jurisdiction because Defendants are immune from a § 1983 action seeking money damages under the Eleventh Amendment. The Eleventh Amendment to the United States Constitution states:

> The judicial power of the United States shall not be construed to extend to any suit in law or equity, commenced or prosecuted against one of the United States by Citizens of another State, or by Citizens or Subjects of any Foreign State.

Eleventh Amendment immunity functions as a jurisdictional bar to prevent federal courts from hearing cases brought against a state by the citizens of that state or of another state. *Pennhurst State Sch. & Hosp. v. Halderman*, 465 U.S. 89, 100 (1984).

While a state may waive its Eleventh Amendment immunity and consent to a federal court's jurisdiction, that consent must be "unequivocally expressed." *Id.*  at 99. Congress also has the authority to abrogate Eleventh Amendment immunity by enacting 42 U.S.C. § 1983 (*Quern v. Jordan*, 440 U.S. 332, 340-41, 99 S.Ct. 1139, 59 L. Ed. 2d 358 (1979)), and Plaintiff's claim can only proceed if Ohio has consented to be sued.

Simply put, Ohio has not consented to be sued in this action. Although § 1983 claims may be asserted against state employees, they cannot be asserted against the state. Here, Plaintiff seeks to recover $750,000 in compensatory and punitive damages from the Ohio treasury by suing the

ODRC and Defendants in their official capacities. State agencies, including its employees acting in their official capacities, cannot be sued for monetary damages without the state's consent, pursuant to the Eleventh Amendment. *See Turker v. Ohio Dep't of Rehabilitation & Corrections*, 157 F.3d 453, 456 (6th Cir. 1998); *Walker v. Michigan Dep't of Correction*, 128 Fed. Appx. 441, 445 (6th Cir. 2005). Because Ohio has not consented to be sued under § 1983 and because Congress has not otherwise abrogated Ohio's Eleventh Amendment immunity by permitting § 1983 claims against states, the Eleventh Amendment protects Ohio from Plaintiff's claims in federal court. For this reason, I recommend that the Court DISMISS any claims for monetary damages Plaintiff has brought against the Ohio Department of Rehabilitation and Corrections and the Defendants in their official capacities.

However, Plaintiff also requests preliminary and injunctive relief. The Eleventh Amendment "does not preclude actions against state officials sued in their official capacity for prospective injunctive or declaratory relief." *Thiokol Corp. v. Dep't of Treasury, State of Mich., Revenue Div.*, 987 F.2d 376, 381 (6th Cir. 1993); *accord Diaz v. Mich. Dep't of Corr.*, 703 F.3d 956, 964 (6th Cir. 2013) ("[T]he Supreme Court announced an exception to Eleventh Amendment sovereign immunity in *Ex parte Young* for claims for injunctive relief against individual state officials in their official capacities."). Thus, Plaintiff's claims for preliminary and injunctive relief against Defendants in their official capacities and the claims against them in their personal capacities are not barred by the Eleventh Amendment.

## B. Failure to Investigate Claim – 42 U.S.C. § 1983

The Court construes Plaintiff's Complaint as raising § 1983 Eight Amendment deliberate indifference claims against Dahlby and Booth for failure to adequately investigate the alleged assault of Plaintiff. Plaintiff alleges that Dahlby and Booth were charged with investigating a prior

incident of staff assaulting him and that they "purposely mishandled" the investigation. (ECF Doc. 1, PageID#6). Plaintiff claims that Defendants also "deliberately fumbled" the investigation of the alleged assault at issue. (*Id.*) He asserts that proper documentation and adherence to established prison policies/regulations would have shown further violations of his Eighth Amendment rights. (*Id.*)

To the extent that Plaintiff is asserting a § 1983 claim against any defendant based on the failure to investigate his complaints/grievances/appeals, he fails to state a plausible claim upon which relief may be granted. The Sixth Circuit has held that "[t]here is no statutory or common law right, much less a constitutional right, to an investigation." *Mitchell v. McNeil*, 487 F.3d 374, 378 (6th Cir. 2007). Further, to the extent that Plaintiff claims that the grievance procedure failed to produce the correct outcome, this does not give rise to a § 1983 claim because "[p]rison inmates do not have a constitutionally protected right to a grievance procedure." *Miller v. Haines*, No. 97-3416, 1998 WL 476247, at *1 (6th Cir. Aug. 3, 1998) (citations omitted). Prison officials whose only roles "involve the denial of administrative grievances or the failure to act" to remedy the alleged unconstitutional behavior are not liable under § 1983. *Shehee v. Luttrell*, 199 F.3d 295, 300 (6th Cir. 1999). Moreover, a prison official's alleged failure to adequately investigate claims of misconduct do not rise to the level of "encouragement" that would make the official liable for such misconduct. *Knop v. Johnson*, 977 F.2d 996, 1014 (6th Cir. 1992); *Bellamy v. Bradley*, 729 F.2d 416, 421 (6th Cir. 1984).

Finally, to the extent that the Complaint asserts claims against Defendants based on their alleged violations of Ohio prison policies by failing to properly document and follow established prison policies, Plaintiff fails to state a plausible claim upon which relief may be granted. Failure to comply with a prison policy does not itself rise to the level of a constitutional violation. *See*

8

*Laney v. Farley*, 501 F.3d 577, 581 n.2 (6th Cir. 2007) (a § 1983 claim may not be based upon a violation of state procedure) (citation omitted); *Smith v. Freland*, 954 F.2d 343, 347-48 (6th Cir. 1992) (violations of a municipal policy does not create liability under § 1983).

Accordingly, I recommend that Jenkins' claims against Dahlby and Booth for failure to investigate be DISMISSED for failure to state a claim upon which relief may be granted.

### C.  Cruel and Unusual Punishment – Eighth Amendment

The Eighth Amendment imposes a constitutional limitation on the power of the states to punish those convicted of crimes. Punishment may not be "barbarous" or violate society's "evolving standards of decency." *Rhodes v. Chapman*, 452 U.S. 337, 346 91981). Therefore, the Eighth Amendment prohibits prison official from conduct involving the "unnecessary and wanton infliction of pain." *Ivey v. Wilson*, 832 F.2d 950, 954 (6th Cir. 1987) (per curiam) (quoting *Rhodes*, 452 U.S. at 346). However, this does not mandate that a prisoner be free from discomfort or inconvenience during his or her incarceration. *Id.* "[T]he good faith use of physical force in pursuit of valid penological or institutional goals will rarely, if ever, violate the Eighth Amendment." *Id.* (citations omitted). To determine if prison officials used improper force or punishment, the court must look at the objective nature of the force used, the resulting harm, and the subjective intent of the officers. *See Hudson v. McMillian*, 503 U.S. 1, 7 (1992).

The objective component of an Eighth Amendment claim of cruel and unusual punishment is contextual and responsive to "contemporary standards of decency." *Id.* at 8. It requires the "pain inflicted to be 'sufficiently serious'" to offend "contemporary standards of decency." *Cordell v. McKinney*, 759 F.3d 573, 580 (6th Cir. 2014) (citing *Santiago v. Ringle*, 734 F.3d 585, 590 (6th Cir. 2013). "While the extent of a prisoner's injury may help determine the amount of force used by the prison official, it is not dispositive of whether an Eighth Amendment violation has

occurred." *Id.* at 580-81. As the Supreme Court has held, "[w]hen prison officials maliciously and sadistically use force to cause harm, contemporary standards of decency always are violated…whether or not significant injury is evident." *Hudson*, 503 U.S. at 9; *see also Wilkins v. Gaddy*, 559 U.S. 34 (2010) (per curiam).

The subjective component focuses on the state of mind of the prison officials. The relevant inquiry is "whether force was applied in a good-faith effort to maintain or restore discipline, or maliciously and sadistically to cause harm." *Hudson*, 503 U.S. at 7. The Sixth Circuit has also recognized that not every physical interaction with a prison or jail guard gives rise to a federal cause of action. Specifically, the Sixth Circuit has  held that:

> [O]fficials confronted with a prison disturbance must balance the threat [that] unrest poses to inmates, prison workers, administrators, and visitors against the harm inmates may suffer if guards use force. Because prison officials must make their decisions in haste, under pressure, and frequently without the luxury of a second chance, we must grant them wide-ranging deference in the adoption and execution of policies and practices that in their judgment are needed to preserve internal order and discipline and to maintain institutional security.

*Combs v. Wilkinson*, 315 F.3d 548, 557 (6th Cir. 2002). Therefore, the issue is not whether the use of force was absolutely necessary in hindsight.  Rather, the issue is "whether the use of force could plausibly have been thought necessary, or if it showed such wantonness with respect to the unjustified infliction of harm that cannot be seen as anything but a willingness for it to occur." *Whitley v. Albers*, 475 U.S. 312, 321 (1986); *Griffin v. Hardrick*, 604 F.3d 949, 954 (6th Cir. 2010). Courts may consider "the need for the application of force, the relationship between the need and the amount of force that was used, and the extent of injury inflicted." *Williams v. Curtin*, 631 F.3d at 383 (quoting *Whitley*, 475 U.S. at 321). They may also consider the circumstances "as reasonably perceived by the responsible officials on the basis of the facts known to them, and any efforts made to temper the severity of a forceful response." *Id.*

10

Defendants argue in their Motion to Dismiss that Plaintiff failed to allege facts that support a claim of cruel and unusual punishment in violation of the Eighth Amendment because Plaintiff is "unable to point to any malicious or sadistic behavior by Defendant Dahlby in deploying pepper spray." (ECF Doc. 6, PageID#71). Further, Defendants assert that- besides Plaintiff's conclusory statements - he failed to provide any facts to sufficiently support a showing that Dahlby's conduct reached constitutional dimensions under the Eighth Amendment. (*Id.*) In his Memorandum in Contra, Plaintiff reiterated the legal standards for cruel and unusual punishment and maintained that the facts and arguments demonstrate that he met the threshold requirements of both the subjective and objective prongs. (ECF Doc. 11, PageID#91-92).

Defendants maintain in their Reply that Plaintiff has failed to allege facts that support his Eighth Amendment violation claim. Specifically, they assert that Plaintiff's primary alleged injury was being sprayed in the face with pepper spray. (ECF Doc. 13, PageID#101). Citing to *Burfitt v. Cunningham*, No. 3:20-cv-1757 (N.D. Ohio Mar. 3, 2022),[2] Defendants contend that  Plaintiff's alleged injuries of being sprayed in the face with pepper spray and receiving a scratch in the genitals were *de minimis* and thus did not meet the objective component of an Eighth Amendment claim. (ECF Doc. 13, PageID#101). Further, Defendants assert that even if, for the sake of argument, Plaintiff was sprayed maliciously and unjustifiably in the face with pepper spray, the culpable individual is not a party to this case.[3] (*Id.*)

---

[2] This case was not available on Westlaw or Lexis at the time of this Report and Recommendation. The undersigned cites to the docket from this Court's CM/ECF for any discussion of this case.

[3] The Court notes that there appears to be a factual dispute regarding Dahlby's involvement in the pepper spraying of Plaintiff. Specifically, Defendants allege that the individual that sprayed Dahlby is not a defendant in this case. However, Defendants provide no citation to the record in support of their claim, so it is unclear how they reached this conclusion. (*See* ECF Doc. 13, PageID#100-101). Further, upon independent review of the record by the Court, the Court found allegations from Jenkins in his Complaint and attached exhibits that allege that Dahlby witnessed/participated in the pepper spray incident and Jenkins' extraction from the prison cell. (*See generally* ECF Doc. 1, ¶¶3-5; ECF Doc. 1-1, PageID#10, 18). The resolution of this factual dispute is more appropriate at summary judgment rather than on a motion to dismiss.

11

Based on a review of the record before the Court in this case and the controlling case law, Plaintiff has made sufficient allegations to satisfy the objective and subjective prongs of an Eighth Amendment claim at this stage of the proceeding. Specifically, the Sixth Circuit's decision in *Williams v. Curtin* is applicable here. In *Williams*, a prisoner brought a § 1983 claim against prison officials alleging Eighth Amendment violations. *See Williams v. Curtin*, 631 F.3d 380, 384 (6th Cir. 2011). The prisoner alleged that when instructed to "pack up" by a prison official, he inquired, "What for, sir?" *Id.* After this inquiry, he alleged that an "assault team" entered the cell and used a chemical agent on him. *Id.* The plaintiff's alleged injuries from the pepper spray was "coughing and shortage of oxygen." *Id.* The Sixth Circuit determined that district court erred in concluding that the prisoner's complaint failed to state a claim based on the rationale that the plaintiff satisfied the objective and subjective prongs of an Eighth Amendment claim. Rather, the Sixth Circuit found that the prisoner had sufficiently alleged that the prison officials acted "with a culpable state of mind" because the alleged facts accepted as true could permit a finding that "the use and/or amount of force was unnecessary," suggesting that the officials' actions were "not taken in good faith and were perhaps motivated by the malicious purpose of causing harm." *Id.*

Further, regarding the objective component, the Court determined that the prisoner's alleged injuries of coughing and shortage of oxygen were an "insufficient basis upon which to dismiss the Complaint" and that the district court should have considered the degree of force applied by the prison officials. *Id.* It reasoned that "violent extraction, complete with the use of a chemical agent that caused some degree of injury" was adequate to plead that the pain inflicted was "sufficiently serious." *Id.*

At this stage of the pleadings, Plaintiff appears to have satisfied the subjective prong of the Eighth Amendment claim. Notwithstanding that Plaintiff did not face an "assault squad" here, the

12

other facts in *Williams* are similar to the instant case. Specifically, Plaintiff alleges that Dahlby instructed Plaintiff to strip down in the cell while he was handcuffed. (ECF Doc. 1, PageID#4) After turning around to face Dahlby, Plaintiff further alleges that he was immediately sprayed with pepper spray. (*Id.*) Accepting these allegations as true permit a finding that Dahlby's actions were not taken in "good faith and perhaps motivated by the malicious purpose of causing harm." *See Williams*, 63 F.3d at 384.

Additionally, Plaintiff sufficiently satisfies the objective prong of an Eighth Amendment claim at this stage of the proceedings. Defendants allege that Plaintiff's alleged injuries are *de minimis.* Specifically, they allege that Plaintiff's primary alleged injury was pepper spray and a scratch across the genitals. (ECF Doc. 13, PageID#100-101). While it is true that Plaintiff alleged injuries from pepper spray and a "raking over" his genitals, Defendants do not address his other alleged injuries. For example, Plaintiff alleges that after being sprayed multiple times with pepper spray, he was "blind, burning, and choking." (*Id.*) Plaintiff further states that he was rolling on the ground to move "before a boot step[ped] onto his spine." (*Id.*) Pinned to the ground by the boot, another unnamed officer "rip[ped]" him from the floor before the boot fell off. (*Id.*) He felt "pain" in his back. (*Id.*) Then, Plaintiff alleges that Dahlby and an unnamed officer dragged him outside the cell, dropped him, and that his spine "click[ed]." (*Id.*) Plaintiff further contends that Dahlby and the other unnamed officer pepper then lifted him off the ground and locked him in an empty cell where he "began to choke" because the air was filled with chemicals from the pepper spray. (*Id.*) Plaintiff asserts that he stuck his mouth through the cuff port so he could breathe. (*Id.*) As the Sixth Circuit found in *Williams*, *de minimis* injury from pepper spray may serve as an insufficient basis to dismiss an Eighth Amendment claim. *Williams*, 631 F.3d at 384 (finding that coughing and shortage of oxygen as a *de minimis* injury was not a sufficient basis to dismiss Plaintiff's

13

Eighth Amendment claim). And based on Plaintiff's alleged injuries from pepper spray and allegations of forcible extraction from a cell, he has adequately pled that the pain inflicted was "sufficiently serious." *See Williams*, 631 F.3d at 384; *see also Wilkins v. Gaddy*, 559 U.S. 34, 38 (2010) ("Injury and force … are only imperfectly correlated, and it is the latter that ultimately counts. An inmate who is gratuitously beaten by guards does not lose his ability to pursue an excessive force claim merely because he has the good fortune to escape without serious injury.").

Defendants' reliance on *Burfitt v. Cunningham*, No. 3:20-cv-1757 (N.D. Ohio Mar. 3, 2022), is not persuasive at this stage of the pleadings. First, the undersigned notes that *Burfitt* was decided on a motion for summary judgment, meaning that parties had the benefit of conducting discovery and the Court could dismiss a claim because there was no genuine issue of material fact based on the facts presented by *both* parties. *See Burfitt v. Cunningham*, No. 3:20-cv-01757, ECF Doc. 37. Next, the court in *Burfitt* determined that the defendants' use of force was in response to a "dangerous outburst" by the prisoner plaintiff rather than for the sole purpose of causing him harm, and that the plaintiff's initiation of an altercation with the defendants ultimately led to the force used against him. *Id.* The Court in *Burfitt* further held that plaintiff failed to rebut the defendants' evidence that the Use of Force Committee's finding that the defendants' actions were reactive and not excessive under the circumstances. *Id.* at 6-7. Accordingly, the court in *Burfitt* determined that the defendants had not satisfied the subjective prong of the proceedings. *Id.* at 6-7.

With respect to the objective prong, the *Burfitt* court reasonably determined that the plaintiff failed to establish the subjective prong because the plaintiff's injury was not "sufficiently serious." *Id.* at 7. Specifically, the plaintiff sustained a small cut on his hand and had remnants of pepper spray in his eyes. *Id.* The *Burfitt* court determined that these injuries were *de minimis*

because the plaintiff did not appear to be in pain and refused medical care beyond allowing his eyes to be flushed. *Id.* Additionally, the prisoner's injuries did not require further care in the following day. *Id.* While the plaintiff asserted that he sustained additional injuries, he failed to provide evidence in support of this allegation. *Id.* Accordingly, the court determined that the plaintiff failed to meet the objective prong. *Id.*

Here, Plaintiff alleges that he was pepper sprayed immediately after being asked to strip while he was handcuffed. Plaintiff's Complaint does not contain any allegations—and the Defendants do not assert in their Motion to Dismiss and Reply (*See* ECF Doc. 6, PageID#70-71; ECF Doc. 13, PageID#99-101)—that he initiated an altercation that ultimately led to the use of force against him or disobeyed direct orders. *Cf. Theodore W. Smith, II v. Ohio Dep't of Rehab. & Corr., et al.*, No. 3:21-CV-1421, 2022 WL 4551478, at *5 (N.D. Ohio Sept. 29, 2022) (finding plaintiff failed to state an excessive force claim where defendants stated that use of pepper spray on prisoner was in response to the plaintiff's outburst and refusal to follow commands); *Jennings v. Mitchell*, 93 F. App'x 723, 725 (6th Cir. 2004) (holding that officers did not violate an inmate's Eighth Amendment rights when they pepper sprayed him after he refused to obey orders); *Thomas v. Greene*, No. 99-3179, 1999 WL 1253102 (6th Cir. Dec. 17, 1999) (affirming dismissal of prisoner's excessive force claim upon finding that he was uncooperative and threatening prior to being pepper sprayed).

Here, Plaintiff allegedly sustained similar injuries to the *Burfitt* plaintiff; additionally, he also alleges pain from being "rip[ped]" off the ground by an unnamed officer while Plaintiff allegedly still had a boot placed on his lower back. (ECF Doc. 1, PageID#4) Plaintiff further alleges that Dahlby and an unnamed officer dragged and dropped him outside and his spine "click[ed]." (*Id.*). He further contends that Defendants failed to provide him medical treatment after "suffering

15

injuries that kept him in the hospital for six months." (*Id.* at 5). Construing these allegations as true, Plaintiff's allegations satisfy the objective and subjective prongs of an Eighth Amendment claim at least against Dahlby.

To the extent that Plaintiff asserts an Eighth Amendment claim against McConahay and Booth, I recommend that those claims be dismissed because Plaintiff failed to state a claim upon which relief can be granted. Specifically, to the extent that Plaintiff's Complaint attempts to hold Booth liable for another officer's alleged use of excessive force based solely on her denial of his grievance, this Eighth Amendment claim should be dismissed. Plaintiff does not allege facts that Booth applied excessive force. And responding to a grievance or otherwise participating in the grievance procedure is insufficient to trigger liability under 42 U.S.C. § 1983. *Shehee v. Luttrell*, 199 F.3d 295, 300 (6th Cir. 1999); *see Richardson v. Rupert*, No. 3:14-cv-01415, 2015 WL 1456553, at *6 (N.D. Ohio Mar. 30, 2015) (finding that an institutional inspector could not be liable for another officer's alleged use of excessive force based solely on the inspector's denial of the prisoner's grievance). Accordingly, Plaintiff fails to state a claim against Booth.

Plaintiff also fails to allege facts that McConahay applied excessive force. *See Dotson v. Sloan*, No. 1:14-CV-2491, 2015 WL 1423435, at *3 (dismissing prisoner's claims against prison warden where the plaintiff made no allegations that the warden was personally involved). Thus, to the extent that Jenkins' Complaint raises any Eighth Amendment claim against McConahay, I recommend that those claims be dismissed.

In sum, I recommend that Defendants' Motion to Dismiss with respect to Plaintiff's Eighth Amendment excessive force claim be GRANTED in part and DENIED in part. With respect to Booth and McConahay, I recommend that the Court GRANT Defendants' Motion and DISMISS Plaintiff's Eighth Amendment claims because he has failed to expressly assert claims against these

Defendants. With respect to Dahlby, I recommend the Court DENY Defendants' Motion to Dismiss because Plaintiff has sufficiently alleged facts to support an excessive force claim against Dahlby at this stage of the proceeding.

### D.  Deliberate Indifference to Medical Needs – Eighth Amendment

The Eighth Amendment prohibits prison officials from acting with "deliberate indifference" toward an inmate's serious medical needs. *See Estelle v. Gamble*, 429 U.S. 97, 104 (1976); *see also Horn by Parks v. Madison Cty. Fiscal Ct.*, 22 F.3d 653, 660 (6th Cir. 1994). ("Where prison officials are so deliberately indifferent to the serious medical needs of prisoners as to unnecessarily and wantonly inflict pain, they impose cruel and unusual punishment in violation of the Eighth Amendment."). Therefore, a plaintiff must demonstrate that: (1) his medical condition posed "a substantial serious risk of harm" to him; and (2) each defendant in question acted with subjective deliberate indifference to that risk. *See Farmer v. Brennan*, 511 U.S. 825, 834 (1994).

The objective element requires the existence of a "sufficiently serious" medical need. *Id.* A sufficiently serious medical need has been defined as one "that has been diagnosed by a physician as mandating treatment or one that is so obvious that even a lay person would easily recognize the necessity for a doctor's attention." *Harrison v. Ash*, 539 F.3d 510, 518 (6th Cir. 2008) (citations omitted).

The subjective element requires "an inmate to show that prison officials have 'a sufficiently culpable state of mind in denying medical care.'" *Blackmore v. Kalamazoo County*, 390 F.3d 890, 895 (quoting *Brown v. Bargery*, 207 F.3d 863, 867 (6th Cir. 2000)). To establish the requisite culpability, a prisoner must demonstrate that the prison official(s) "(1) subjectively knew of a risk to the inmate's health, (2) drew the inference that a substantial risk of harm to the inmate existed,

and (3) consciously disregarded that risk." *Jones v. Muskegon Cty.*, 625 F.3d 935, 941 (6th Cir. 2010); *Brik v. McConnell*, No. 4:20-cv-1825, 2021 WL 307 572, at *6 (N.D. Ohio Jan. 29, 2021). "[A]n inadvertent failure to provide adequate medical care" is not "repugnant to the conscience of mankind" and is therefore insufficient to state a claim of deliberate indifference. *Estelle*, 429 U.S. at 105-106. Likewise, allegations of medical malpractice or negligent diagnosis and treatment are insufficient to state a claim. *Jennings v. Al-Dabagh*, 97 Fed. App'x 548, 549-50 (6th Cir. 2004). To prove subjective recklessness, a plaintiff may rely on circumstantial evidence. *Rhinehart v. Scutt,* 894 F.3d 721, 738 (6th Cir. 2018). A jury is entitled to "conclude that a prison official knew of a substantial risk from the very fact that the risk was obvious." *Farmer*, 511 U.S. at 842.

### 1. *Blood Pressure Cuff Incident*

Plaintiff alleges that Nurse Glass showed deliberate indifference to his medical needs. Plaintiff alleges that he was placed on constant/suicide watch status. (ECF Doc. 1, PageID#3). Plaintiff further alleges that he willingly complied to being cuffed behind his back and escorted to an empty cell. (ECF Doc. 1, PageID#4). While explaining that he was not experiencing any suicidal thoughts to Officer "John Doe" and Stewart, Plaintiff alleges that he began experiencing chest pain and shortness of breath. (*Id.*) Nurse Glass took his blood pressure and pulse and allegedly showed contempt towards him by stating, "Now I'll charge [your] account $3." and walked out of the cell. (*Id.*) It is on these facts that Plaintiff premises his allegation that Nurse Glass showed deliberate indifference to his medical needs. (*Id.*)

Plaintiff's Complaint has failed to state a claim for deliberate indifference to his medical needs against Defendants for this specific incident. The undersigned notes that Plaintiff has accused Nurse Glass, who is not a named party in this cause of action, of deliberate indifference to his medical needs in this incident. To establish a claim for deliberate indifference to medical

needs, Jenkins had to demonstrate that *Defendants* acted with deliberate indifference to his serious medical needs. *Farmer*, 511 U.S. at 835. Plaintiff, however, does not allege facts to suggest Dahlby, Booth, or McConahay refused to treat him, ignored his complaints, intentionally treated him incorrectly, or engaged in any conduct that reveals a wanton disregard to his serious medical needs. Plaintiff cannot establish liability of any defendant absent a clear showing that the defendant was personally involved in the activities which form the basis of the alleged unconstitutional behavior. *Rizzo v. Goode*, 423 U.S. 362, 371 (1976); *Mullins v. Hainesworth*, No. 95-3186, 1995 WL 669381 (6th Cir. Sept. 20, 1995). Absent some indication that Dahlby, Booth, or McConahay personally participated in these activities, Plaintiff has failed to state a claim for deliberate indifference to medical needs in this circumstance.

Yet even if Plaintiff had named Nurse Glass as a defendant, his Complaint would still fail to state a claim for deliberate indifference to his medical needs. While Plaintiff alleges that Nurse Glass spoke disrespectfully to him, he does not allege that she refused to treat him, ignored his complaints, intentionally treated him incorrectly, or engaged in any conduct that reveals a wanton disregard to his serious medical needs. Rather, his allegations reveal that Nurse Glass responded to his medical symptoms by taking his blood pressure and pulse. *Cf. Dominguez v. Correctional Med. Servs.*, 555 F.3d 543, 550-51 (6th Cir. 2009) (finding deliberate indifference when a nurse refused to see a patient experiencing severe symptoms until her regularly scheduled medication run several hours later). Further, Plaintiff's Complaint does not allege a serious medical condition that posed a serious risk of harm to him. Nor does Plaintiff allege any additional facts to show that he suffered any injury at that point that required further evaluation or treatment. Accordingly, I recommend that Plaintiff's deliberate indifference claim with respect to his treatment of chest pain and shortness of breath should be DISMISSED.

19

## 2. *Injuries from Pepper Spray and Alleged Assault*

Plaintiff alleges that Dahlby and an unnamed prison guard were deliberately indifferent to his medical needs because they failed to provide him medical treatment after he was pepper sprayed and suffered injuries that required him to stay in the hospital for six months. (ECF Doc. 1, PageID#5).  Plaintiff also alleges that while the officers dragged him across the floor, one officer "aggressively rake[d]" his hand across Plaintiff's genitals, resulting in a scratch that required treatment at the hospital. (*Id.*).  Plaintiff further asserts that he was left naked in a watch cell, without being treated for his injuries or decontaminated of pepper spray. (*Id.* at PageID#6, ¶ 6). Because watch cells are kept at a much colder temperature than any other cell, Plaintiff alleges that he was "freezing, burning of pepper spray, in excruciating pain, and sleep deprived." (*Id.*)

In Defendants' Motion to Dismiss, they assert that Plaintiff has failed to state medical indifference that raises to a constitutional violation because Plaintiff's Complaint does not allege any named parties refused to treat him, ignored his complaints, intentionally treated him incorrectly, or engaged in any conduct that reveals a wanton disregard to his serious medical needs. (ECF Doc. 6, PageID#73). They contend that Plaintiff's Complaint does not provide any factual allegations "beyond his mere self-serving conclusory statements" to support allegations of Defendants' misconduct. (*Id.*)

Liberally construing Plaintiff's Complaint and taking Plaintiff's allegations as true, the undersigned finds that Plaintiff has not sufficiently alleged that Dahlby and the unnamed officer were deliberately indifferent. With respect to the objective prong, Plaintiff has stated allegations of a medical need that was sufficiently serious. The effects of pepper spray, standing alone, typically fails to indicate an objective, "sufficiently serious" medical need giving rise to constitutionally-mandated medical treatment where the inmate has access to soap and water to

20

decontaminate. *See Woodard v. Winters*, No. 2-16-cv-704, 2018 WL 3020336, at *11 (S.D. Ohio June 18, 2018), *report and recommendation adopted*, 2018 WL 4610511 (S.D. Ohio Sept. 26, 2018). However, allegations that a plaintiff was denied access to decontamination after being pepper sprayed for a substantial length of time, under some circumstances, can support a claim for deliberate indifference to serious medical needs. *See, e.g.*, *Williams v. Prisoner Transp. Servs., LLC,* No. 3:19-cv-599, 2020 WL 7027506, at *12 (M.D. Tenn. Nov. 30, 2020) ("Plaintiff has sufficiently alleged that Defendants' failure to provide him a shower after spraying him with pepper spray and requiring him to sit in human excrement and urine for four days was an unconstitutional deprivation of basic hygiene. [He] has also sufficiently asserted that he suffered an injury as a result of that deprivation, in that he was required to sit in sweltering heat with the pepper spray burning his eyes, nose, and skin for two days because he could not wash it off"); *Jennings v. Fuller*, 659 F. App'x 867, 870 (6th Cir. 2016) (discussing a situation where plaintiff was tied "face-down for three hours on a restraint bed" in a blood and pepper spray soaked spit hood, with no medical attention, even though plaintiff screamed he had emphysema and trouble breathing, causing him to lose consciousness several times). *Cf. Payne v. Gifford*, No. 1:16-cv-514, 2017 WL 4329631, at *5 (S.D. Ohio Sept. 5, 2017), *report and recommendation adopted*, 2017 WL 431543 (S.D. Ohio Sept. 28, 2017) (granting summary judgment based on finding an absence of a sufficiently serious medical need to treat the effects of pepper spray where the plaintiff was permitted to adequately decontaminate following its use).

Here, Plaintiff alleges that Dahlby and an unnamed prison officer failed to provide him medical treatment after being pepper sprayed and "suffering from injuries that kept him in the hospital for six months." (ECF Doc. 1, PageID#5). After being allowed to uncuff, Plaintiff took off his clothes and was shackled. (*Id.*) He allegedly collapsed against the floor unable to breathe

or get into an upright position. (*Id.*) He contends that while the officers dragged him from the floor, one "aggressively rake[d]" his hand across Plaintiff's genitals, resulting in a scratch that required hospital treatment. (*Id.*). Plaintiff asserts that he was left in a watch cell naked, without being treated for his injuries or decontaminated of pepper spray. (*Id.*). Because the watch cells are kept at a much colder temperature, he alleges that he was "freezing, burning of pepper spray, in excruciating pain and sleep deprived." (*Id.*). Construing Plaintiff's allegations liberally and viewing all facts and reasonable inferences in favor of Plaintiff, he has alleged that he was pepper sprayed and did not receive any decontamination or medical attention for his injuries, which satisfies the objective prong of a deliberate indifference to medical needs claim at this stage of the proceedings.

Yet with respect to the subjective prong, drawing all reasonable inferences in Plaintiff's favor and accepting all allegations as true, the undersigned finds that Plaintiff has not sufficiently pleaded a culpable state of mind on the part of Dahlby. He does not allege that Defendants knew or should have known that his skin was burning, his genitals were scratched, or his back was in pain. Indeed, Plaintiff fails to allege that he ever requested medical care or that he was ever denied an opportunity to be seen by medical personnel. *See Brown v. Perez*, No. 16-2558, 2017 WL 3378994, at *3 (6th Cir. 2017) (holding that while the plaintiff satisfied the objective prong of a deliberate indifference claim by alleging a skin injury from exposure to a chemical agent, the plaintiff failed to satisfy the subjective prong of a deliberate indifference claim because he did not set forth facts demonstrating that the defendants disregarded a substantial risk of harm of which they were aware); *see also Scott v. Ambani*, 577 F.3d 642, 648 (6th Cir. 2009) (a prisoner states a claim for deliberate indifference "*when he alleges that prison authorities have denied reasonable requests for medical treatment* in the face of an obvious need for such attention where the inmate

is thereby exposed to undue suffering") (citing *Westlake*, 537 F.2d at 860) (emphasis added). *Cf.*
*McDougald v. Bear*, No. 1-17-cv-124, 2017 WL 5178764, at *4 (S.D. Ohio Nov. 7, 2017) (holding
that plaintiff satisfied the subjective prong of a deliberate indifference claim by alleging that he
was placed in a holding cell with no running water and that he was denied decontamination after
notifying defendants of his difficulty breathing after the pepper spray application). Thus, Plaintiff
has failed to establish any facts demonstrating that Dahlby disregarded a substantial risk of serious
harm of which he was aware. Accordingly, I recommend that Plaintiff's claim for deliberate
indifference to serious medical needs be DISMISSED against Dahlby. Further, because Plaintiff
does not allege that McConahay and Booth engaged in the alleged conduct, I also recommend that
Plaintiff's Eighth Amendment deliberate medical indifference claim against them be DISMISSED.

### E. First Amendment – Free Exercise of Religion

The First Amendment of the United States Constitution mandates that Congress shall make
no law prohibiting the free exercise of religion, and this prohibition applies to the states by virtue
of the Fourteenth Amendment. *See Cantwell v. Connecticut*, 310 U.S. 296, 303 (1940). Prisoners
retain their First Amendment right to the free exercise of religion while incarcerated, but that right
is still subject to reasonable restrictions and limitations. *See Cruz v. Beto*, 405 U.S. 319, 322
(1972); *Walker v. Mintzes*, 771 F.2d 920, 929 (6th Cir. 1985).

The mere assertion of a religious belief does not automatically trigger First Amendment
protection. To state a free exercise claim under the First Amendment, Plaintiff must establish: (1)
that the belief or practice he seeks to protect is religious in his "own scheme of things," (2) his
belief is sincerely held, and (3) the defendant's behavior infringes upon this practice or belief. *See*
*Kent v. Johnson*, 821 F.2d 1220, 1224-25 (6th Cir. 1987) (citations omitted). "[T]he touchstone
for determining whether a religious belief is entitled to free-exercise protection is an assessment

of whether the beliefs processed…are *sincerely held*, not whether the belief is accurate or logical."
*Colvin v. Caruso*, 605 F.3d 282, 298 (6th Cir. 2010) (emphasis in original) (internal quotation
marks and citation omitted). Significantly, the prison's actions must substantially burden an
inmate's sincerely held religious belief. *Barhite v. Caruso*, 377 F. App'x 508, 510 (6th Cir. 2010).

The next step is to determine whether the prison official's challenged behavior furthers
some legitimate penological objective. *Turner v. Safley*, 482 U.S. 78, 89 (1987); *Kent*, 821 F.3d at
1225 (citations omitted). Prison officials are accorded wide latitude and deference in the adoption
and application of prison policies and procedures in this regard. *See Bell v. Wolfish*, 441 U.S. 520,
546-47 (1979).

The Court construes Plaintiff's Complaint to allege that Defendants violated his
constitutional rights by preventing the free exercise of his religion while he was incarcerated.
Specifically, Plaintiff alleges that Warden Tim McConahay has a policy to classify any religious
fast a hunger strike. (ECF Doc.1, PageID#3). Because of this classification, Plaintiff's security
status would raise from limited privilege to restrictive housing to constant/suicide watch status.
(*Id.*). On February 3rd, 2020, Plaintiff alleges that his security status was again enhanced to
constant/suicide watch. (*Id.*). Plaintiff asserts that Defendants have a policy created to infringe at
will on a prisoner's First Amendment right to free exercise of religion. (*Id.* at 3-4).

Defendants respond that Plaintiff made no allegations in the Complaint that his rights to
practice religion were infringed. (ECF Doc. 6, PageID#75). Instead, Defendants argue that Plaintiff
merely alleges that McConahay has a policy to term any religious fast as a hunger strike. (*Id.*).
Pointing to Plaintiff's attached exhibits, Defendants assert that Plaintiff's own exhibits
demonstrate that he was engaging in a hunger strike instead of a religious fast. (*Id.* (citing ECF

Doc. 1-1, PageID#9-11)). Defendants maintain that Plaintiff was engaged in a self-initiated hunger strike that lasted days, which raised health and security concerns for prison officials. (*Id.*).

Here, Plaintiff's Complaint fails to make a threshold showing of a sincerely held religious belief. Construing his Complaint liberally, Plaintiff probably does allege that he engages in religious fast.[4] (ECF Doc. 1, PageID#3). However, Plaintiff does not make any specific allegations as to his religious beliefs or his belief system. This Court therefore cannot draw the reasonable inference from the allegations in the Complaint that Plaintiff's participation in fasts derives from any sincerely held religious belief. *See Hernandez v. United States*, No. 4:11-CV-1737, 2011 WL 5971028, at *4-5 (N.D. Ohio Nov. 28, 2011) (dismissing First Amendment and RFRA claims regarding the service of kosher food on the grounds that plaintiff made no allegations regarding his own belief system or allege that his desire for kosher food is religion-based or a sincerely held belief); *see also Davismoore v. Davis*, No. 1:18CV1468, 2019 WL 1558679, at *3-4 (N.D. Ohio Apr. 10, 2019) (dismissing First Amendment and RLUIPA claims on the same grounds on initial screening); *Goff v. Chambers-Smith*, No. 1:21-CV-315, 2021 WL 2279808, at *4 (rejecting same claims on same grounds). Accordingly, I recommend that Plaintiff's First Amendment free exercise claim against McConahay should be DISMISSED. Further, because Plaintiff does not allege that Dahlby and Booth engaged in the alleged conduct, I also recommend that Plaintiff's First Amendment free exercise claim against them be DISMISSED.

---

[4] There appears to be a factual dispute over whether Jenkins was engaged in a hunger strike or a religious fast. (*See* ECF Doc. 1, Page ID#1, ¶1; ECF Doc. 6, PageID#75). Indeed, Jenkins' allegations in his Complaint are not consistent with those in his attached exhibits. (*See generally* ECF Doc. 1-1, PageID#9-11). However, even accepting the Plaintiff's allegations as true, the Court need not resolve this factual dispute because Plaintiff fails to state a claim upon which relief could be granted with regard to his First Amendment claim.

## F.  Qualified Immunity

Qualified immunity "shields officials from civil liability if their conduct 'does not violate clearly established statutory or constitutional rights of which a reasonable person would have known.'" *Richmond v. Huq*, 885 F.3d 928, 947 (6th Cir. 2019) (quoting *Pearson v. Callahan*, 555 U.S. 223, 231 (2009). If qualified immunity applies, it is "an immunity from suit rather than just a mere defense to liability[.]" *Pearson v. Callahan*, 555 U.S. 223, 231 (2009). The Sixth Circuit has "cautioned that although qualified immunity claims should be resolved early, it is generally inappropriate for a district court to grant a 12(b)(6) motion to dismiss on the basis of qualified immunity." *See Courtright v. City of Battlecreek*, 839 F.3d 513, 518 (6th Cir. 2016) (internal quotations and citations omitted) (noting that summary judgment is generally the more appropriate time to resolve qualified immunity); *see also Wesley v. Campbell*, 779 F.3d 421, 433-34 (6th Cir. 2015) ("[A]n officer's entitlement to qualified immunity is a threshold question to be resolved at the earliest possible point, that point is usually summary judgment and not dismissal under Rule 12.").

To determine whether an official is entitled to qualified immunity, courts apply a two-prong test: "(1) whether, viewing the allegations in a light most favorable to the party asserting the injury, show the officer's conduct violated a constitutional right; and (2) whether the right violated was clearly established such 'that a reasonable official would understand that what he is doing violates that right.'" *Mullins v. Cyranek*, 805 F.3d 760, 765 (6th Cir. 2015) (quoting *Saucier v. Katz*, 533 U.S. 194, 202 (2001)). These steps may be addressed in any order, and the defendant officer need only prevail on one of them to be granted qualified immunity. *See Coffey v. Carroll*, 933 F.3d 577, 584 (6th Cir. 2019).

Defendants have failed to establish that qualified immunity applies to them at this point in the litigation. Indeed, in its Motion to Dismiss, Defendants merely recite the legal standard of qualified immunity and then make the following conclusory statements: "Plaintiff has failed to establish any conduct that could rise to a Constitutional violation. Instead, Plaintiff alleges nothing beyond mere negligence and state law claims." (ECF Doc. 6, PageID#48). And Defendants' Reply Brief merely reasserts that Defendants are entitled to qualified immunity and that they "will rely on their argument set out in their Motion to Dismiss." (ECF Doc. 1-1, PageID#102). Because Defendants have not applied the qualified immunity standard to the underlying facts in this case, they have failed to meet their burden of establishing that they are entitled to qualified immunity. As set forth above, construing Plaintiff's allegations as true and drawing all inferences in his favor, his Complaint alleges violations of the Eighth Amendment from excessive use of force by Dahlby. Accordingly, I recommend that the Court DENY Defendants' request to dismiss the individual capacity claims against Dahlby based on qualified immunity. Because Plaintiff's Complaint fails to allege colorable violations of the First Amendment and the Eighth Amendment against McConahay and Booth, I recommend that the Court GRANT Defendants' request to dismiss the individual capacity claims against them.

### G. State Law Claims

Defendants assert that Plaintiff's claims against McConahay, Booth, and Dahlby are state law claims and the Court lacks jurisdiction to hear those state law claims. (ECF Doc. 1, Page ID#7-8). Plaintiff does not address this argument. (*See generally* ECF Doc. 11).

Under Ohio law, "state employees may not be sued … until the Ohio Court of Claims determines he is not entitled to immunity." *Haynes v. Marshall*, 887 F.2d 700, 705 (6th Cir. 1989). As the Sixth Circuit explained:

Ohio has not consented to state law actions against the State of Ohio and state officials outside of its own courts. *See Jones v. Hamilton Cty. Sheriff*, 838 F.3d 782, 786 (6th Cir. 2016). Ohio Rev. Code § 9.86 provides that no "employee shall be liable in any civil action that arises under the law of this state for damage or injury caused in the performance of his duties, unless the ... employee's actions were manifestly outside the scope of his employment or official responsibilities, or unless the officer or employee acted with malicious purpose, in bad faith, or in a wanton or reckless manner." Ohio Revised Code § 2743.02(F), in turn, establishes that lawsuits alleging damages against state employees "shall first be filed against the state in the court of claims that has exclusive, original jurisdiction to determine, initially, whether the officer or employee is entitled to personal immunity under section 9.86." Thus, "Ohio law requires that, as a condition precedent to asserting a cause of action against a state employee in his individual capacity, the Court of Claims must first determine that the employee is not entitled to the immunity provided for in Revised Code section 9.86." *Haynes v. Marshall*, 887 F.2d 700, 704 (6th Cir. 1989); *see also McCormick v. Miami Univ.*, 693 F.3d 654, 665 (6th Cir. 2012).

*In re Ohio Execution Protocol Litig.*, 709 F. App'x 779, 784 (6th Cir. 2017).

Here, Plaintiff's Complaint contains no allegations that the Ohio Court of Appeals has determined that any of Defendants' actions have subsequently waived their immunity from suit. Although this Court construes Plaintiff's Complaint to allege federal claims such as excessive use of force and deliberate indifference to medical needs, to the extent that Plaintiff alleges state law claims—specifically failure to comply with ODRC policy and physical and emotional distress—and seeks damages on those claims, the Court lacks jurisdiction to hear those state law claims. Accordingly, I recommend that the Court GRANT Defendants' Motion to Dismiss regarding any state law claims Plaintiff may have alleged.

## V.   RECOMMENDATION

For the reasons set forth above, I recommend that Defendants' Motion to Dismiss (ECF Doc. 6) is GRANTED in part and DENIED in part. Specifically, I recommend that Plaintiff's official-capacity claims against Defendants seeking monetary damages, his state law, First Amendment free exercise claim, and his Eighth Amendment deliberate medical indifference

claims against the Defendants be DISMISSED. I also recommend that Plaintiff's claims for prospective declaratory and injunctive relief against Defendants in their official capacities and Plaintiffs' Eighth Amendment excessive force claim against Dahlby in his personal capacity survive.

## VI.     NOTICE TO PARTIES REGARDING OBJECTIONS

Local Rule 72.3(b) of this Court provides:

> **Any party may object to a Magistrate Judge's proposed findings, recommendations or report made pursuant to Fed. R. Civ. P. 72(b) within fourteen (14) days after being served with a copy thereof, and failure to file timely objections within the fourteen (14) day period shall constitute a waiver of subsequent review, absent a showing of good cause for such failure**. Such party shall file with the Clerk of Court, and serve on the Magistrate Judge and all parties, written objections which shall specifically identify the portions of the proposed findings, recommendations, or report to which objection is made and the basis for such objections. **Any party may respond to another party's objections within fourteen (14) days after being served with a copy thereof.** The District Judge to whom the case was assigned shall make a <u>de novo</u> determination of those portions of the report or specified proposed findings or recommendations to which objection is made and may accept, reject, or modify, in whole or in part, the findings or recommendations made by the Magistrate Judge. The District Judge need conduct a new hearing only in such District Judge's discretion or where required by law, and may consider the record developed before the Magistrate Judge, making a determination on the basis of the record. The District Judge may also receive further evidence, recall witnesses or recommit the matter to the Magistrate Judge with instructions.

*Id.* (emphasis added).

Failure to file objections within the specified time may forfeit the right to appeal the District Court's order. *Berkshire v. Beauvais*, 928 F.3d 520, 530-531 (6th Cir. 2019). Objections must be specific and not merely indicate a general objection to the entirety of the report and recommendation; a general objection has the same effect as would a failure to object. *Howard v. Sec'y of Health and Hum. Servs.*, 932 F.2d 505, 509 (6th Cir. 1991).

Stated differently, objections should focus on specific concerns and not merely restate the arguments in briefs submitted to the magistrate judge. "A reexamination of the exact same argument that was presented to the Magistrate Judge without specific objections 'wastes judicial resources rather than saving them, and runs contrary to the purpose of the Magistrates Act.'" *Overholt v. Green*, No. 1:17-CV-00186, 2018 WL 3018175, *2 (W.D. Ky. June 15, 2018) (quoting *Howard*). The failure to assert specific objections may in rare cases be excused in the interest of justice. *See United States v. Wandahsega*, 924 F.3d 868, 878-79 (6th Cir. 2019).

Dated: October 12, 2022

*s/ Jennifer Dowdell Armstrong*
Jennifer Dowdell Armstrong
United States Magistrate Judge