UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF OHIO
EASTERN DIVISION

| | | |
|---|---|---|
| ZABE JENKINS, | ) | CASE NO. 1:21-cv-1255-CEF |
| | ) | |
| Plaintiff, | ) | JUDGE CHARLES ESQUE FLEMING |
| | ) | |
| v. | ) | MAGISTRATE JUDGE |
| | ) | JENNIFER DOWDELL ARMSTRONG |
| KURT DAHLBY, *et al.*, | ) | |
| | ) | **MEMORANDUM OPINION AND** |
| Defendants. | ) | **ORDER** |
| | ) | |

Pending before the Court are Defendant Kurt Dahlby's motion for summary judgment (ECF No. 31) and Defendant Ohio Department of Rehabilitation and Corrections's ("ODRC") motion for summary judgment (ECF No. 36). Plaintiff Zabe Jenkins has opposed both pending motions for summary judgment. (ECF No. 37). For the reasons discussed below, the motions for summary judgment are **GRANTED**.

I.  **BACKGROUND**

On February 3, 2020, Plaintiff was placed on suicide/constant watch, taken to a holding cell, and directed to uncuff and "strip out" by correction officers at the Mansfield Correctional Institution ("ManCI"). After Plaintiff failed to comply with the order to "strip out," Oleoresin Capsicum ("OC") spray was administered to his facial area, and he was removed from the holding cell by force. (ECF No. 1, PageID #3–4; ECF No. 31-3; ECF No. 31-4; ECF No. 31-5, PageID #257–66).

On June 28, 2021, Plaintiff, proceeding *pro se*, filed a prisoner civil rights complaint under 42 U.S.C. § 1983 against ManCI Warden Tim McConahay, ManCI Institutional Inspector Lisa Booth, ManCI Captain Dahlby, and ODRC. (ECF No. 1). Plaintiff set forth allegations that:

1

(i) ManCI has a policy of treating religious fasting as a hunger strike and placed Plaintiff on suicide watch status; (ii) he was handcuffed, "pepper sprayed," physically assaulted, and stripped of clothing by Dahlby and other correctional officers on February 3, 2020 (the "Incident"); (iii) he was denied medical treatment for serious injuries that resulted from the Incident; and (iv) Dahlby and Booth purposely mishandled the investigation of the Incident. (*Id.* at PageID #3–6). Plaintiff requested compensatory damages, punitive damages, declaratory relief, and injunctive relief. (*Id.* at PageID #7). On November 17, 2021, Defendants moved to dismiss the complaint for failure to state a claim under Fed. R. Civ. P. 12(b)(6). (ECF No. 6).

On October 12, 2022, Magistrate Judge Jennifer Dowdell Armstrong ("Judge Armstrong") submitted a Report and Recommendation ("R&R") recommending that Defendants' motion to dismiss be granted in part and denied in part. (ECF No. 15). Judge Armstrong construed the *pro se* complaint as asserting the following claims: (i) excessive force in violation of the Eighth Amendment; (ii) deliberate indifference to serious medical needs in violation of the Eighth Amendment; (iii) deliberate indifference/failure to investigate Plaintiff's appeals/grievances of the alleged assault in violation of the Eighth Amendment; (iv) infringement of the free exercise of religion in violation of the First Amendment; and (v) state-law tort claims of physical and emotional distress. (*Id.* at PageID #115). Judge Armstrong construed the deliberate indifference/failure to investigate claim as asserted solely against Defendants Dahlby and Booth. (*Id.* at PageID #121). No such distinction was made with regard to the other claims.

Judge Armstrong recommended that the Court: (i) dismiss all claims for monetary damages brought against ODRC, as well as any such claims brought against Defendants in their official capacities, (*id.* at PageID #120–21); (ii) dismiss the Eighth Amendment deliberate indifference/failure to investigate claim against Dahlby and Booth, (*id.* at PageID #123);

(iii) dismiss the Eighth Amendment excessive force claim against Booth and McConahay but deny dismissal as to Dahlby, (*id.* at PageID #130–31); (iv) dismiss the Eighth Amendment deliberate indifference to serious medical needs claims against Dahlby, Booth, and McConahay, (*id.* at PageID #133, 137); (v) dismiss the First Amendment free exercise claim against Dahlby, Booth, and McConahay, (*id.* at PageID #139); and (vi) dismiss all state-law tort claims of infliction of physical and emotional distress, (*id.* at PageID #142). After neither party objected to the R&R, the Court issued an order adopting and incorporating the R&R on January 10, 2023. (ECF No. 19).

Judge Armstrong issued an order setting the deadline for filing dispositive motions as December 1, 2024. (Order [non-document] dated Sept. 30, 2024). Dahlby filed a timely motion for summary judgment on December 2, 2024.[1] (ECF No. 31). On December 5, 2024, the Court granted ODRC an extension of time to file a motion for summary judgment after finding good cause and excusable neglect. (ECF No. 32). The Court found that the following claims were still pending before it: "(i) the Eighth Amendment excessive force claim against Dahlby (with respect to monetary damages (individual capacity), as well as declaratory and injunctive relief (official capacity)) and ODRC (declaratory and injunctive relief only); (ii) the Eighth Amendment deliberate indifference to serious medical needs claims against ODRC (declaratory and injunctive relief only); and (iii) the First Amendment free exercise claim against ODRC (declaratory and injunctive relief only)." (*Id.* at PageID #270). After it moved for another extension, the Court set the final deadline for ODRC to file a motion for summary judgment as January 14, 2025. (Order [non-document] dated Jan. 6, 2025).

On January 10, 2025, Plaintiff moved for an extension of time to file a response in opposition to Dahlby's motion for summary judgment. (ECF No. 35). Noting ORDC's

---

[1] Dahlby's motion for summary judgment is considered timely filed because the deadline fell on a Sunday (December 1, 2024), resulting in the deadline being extended until Monday, December 2, 2024. *See* Fed. R. Civ. P. 6(a)(1)(C).

forthcoming motion for summary judgment, the Court granted Plaintiff's motion and set the deadline for Plaintiff to file a response in opposition to both motions for summary judgment as February 28, 2025. (Order [non-document] dated Jan. 13, 2025). The Court warned Plaintiff that no further extensions would be granted absent extraordinary circumstances. (*Id.*).

On January 14, 2025, ODRC filed its motion for summary judgment. (ECF No. 36). Plaintiff filed a timely opposition to the pending motions for summary judgment.[2] (ECF No. 37). He also contemporaneously filed a motion for discovery sanctions. (ECF No. 38). On March 24, 2025, Defendants filed a reply in support of their motions for summary judgment, (ECF No. 42-1), and an opposition to Plaintiff's sanction motion, (ECF No. 42-2).[3]

## II.  LEGAL STANDARD

Federal Rule of Civil Procedure 56 governs motions for summary judgment. The Rule states that the court shall grant summary judgment "if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). A dispute is genuine if it is "based on evidence upon which a reasonable jury could return a verdict in favor of the non-moving party." *Henderson v. Walled Lake Consol. Schools*, 469 F.3d 479, 487 (6th Cir. 2006). A fact is material if "its resolution might affect the outcome of the suit under the governing substantive law." *Id*. The moving party bears the burden of showing that no genuine issues of material fact exist. *Celotex Corp. v. Catrett*, 477 U.S. 317, 324 (1986). The court views the facts and draws all reasonable inferences in favor of the non-moving party. *Pittman v. Experian Info. Solutions, Inc.*, 901 F.3d 619, 628 (6th Cir. 2018). Once the moving party satisfies its burden, the burden shifts to the non-moving party to produce evidence that

---

[2] Plaintiff signed and dated the certificate of service on February 28, 2025, (ECF No. 37, PageID #585).
[3] The Court found that Defendants had shown good cause for the late filings and granted Defendants' motion to file instanter (ECF No. 42). (Order [non-document] dated March 25, 2025).

4

demonstrates that there is a genuine dispute of a material fact for trial. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 257 (1986); *Zinn v. United States*, 885 F. Supp. 2d 866, 871 (N.D. Ohio 2012) (citing *Fulson v. City of Columbus*, 801 F. Supp. 1, 4 (S.D. Ohio 1992)).

### III. DISCUSSION

As an initial matter, the Court must determine what evidence is properly in the record. Plaintiff raises objections to the exhibits and documents Defendants filed in support of their motions for summary judgment. After the Court has resolved this issue, it will then address the arguments set forth in the motions for summary judgment.

#### A. Plaintiff's Objections to Defendants' Evidence

Plaintiff challenges all the documents that Dahlby and ODRC have attached to and rely on in their motions for summary judgment. (ECF No. 37, PageID #582 (citing ECF Nos. 31-1, 31-2, 31-3, 31-4, 31-5, 36-1, 36-2, 36-3, 36-4)). Plaintiff argues that the Court should not consider these materials because they are "not presented in a form that would be admissible in evidence," citing Fed. R. Civ. P. 56(c)(2). (*Id.*). Plaintiff's argument fundamentally misunderstands what evidence is required at the summary judgment stage. Under Rule 56, a party may object that "material cited to support or dispute a fact cannot be presented in a form that *would be* admissible in evidence." Fed. R. Civ. P. 56(c)(2) (emphasis added). Thus, evidence presented at the summary judgment stage does not have to be in a form admissible at trial; it may be considered so long as the evidence itself *could be* presented in a form that would be admissible at trial. *See Leveline v. Schindler Elevator Corp.*, 630 F. Supp. 3d 874, 880 (E.D. Ky. 2022) (citing *Lloyd v. Midland Funding, LLC*, 639 F. App'x 301, 304–05 (6th Cir. 2016)); *Shelter Mut. Ins. v. Gregory*, 555 F. Supp. 2d 922, 932 (M.D. Tenn. 2008) ("Summary judgment evidence need not be in a form admissible at trial, and may be considered so long as it is relevant to the issue and not hearsay."). Thus, the Court finds

5

that Plaintiff has not filed a proper objection under Rule 56(c)(2) and overrules the objection on this ground.

Even if Plaintiff had made a proper objection, the Court would still find it proper to consider the evidence provided by Defendants. First, the Court need not address any objection to the evidence provided by ODRC because, as discussed in the following section, ODRC is not a proper § 1983 defendant and the claims against ODRC are barred by Eleventh Amendment immunity. Both determinations do not require the Court to review any of the evidence attached to ODRC's motion for summary judgment. Second, the Court concludes that evidence relied on by Dahlby could be produced in a form admissible at trial.

Dahlby provided sworn declarations from himself, Dana Blankenship (Institutional Inspector for ManCI), Billy Morgan (a correctional officer at ManCI), Trevor Zinn (a correctional officer at ManCI), and David Robinson (Correction Warden Assistant at ManCI). (ECF Nos. 31-1, PageID #225–26; ECF No. 31-2, PageID #228–35; ECF No. 31-3, PageID #249; ECF No. 31-4, PageID #252–53; ECF No. 31-5, PageID #255–56). Rule 56 requires that an affidavit or sworn declaration used to support or oppose a summary judgment motion must: (i) be made on personal knowledge; (ii) set out facts that would be admissible in evidence; and (iii) show that the affiant or declarant is competent to testify on the matters stated. Fed. R. Civ. P. 56(c)(4). There is no indication that the facts alleged in these sworn declarations are not made on personal knowledge (as to the events of the Incident or the records, reports, or grievance filings associated with the Incident). Nor is there any indication that the attested facts would not be admissible in evidence or that the declarants are not competent to testify as to those facts. Thus, the Court may properly consider these documents.

6

The attached grievance documents (ECF No. 31-2, PageID #236–48), Use of Force Reports (ECF No. 31-3, PageID #251; ECF No. 31-4, PageID #254; ECF No. 31-5, PageID #257–58, 260–64), and other reports related to the Incident (ECF No. 31-5, PageID #259, 265–67), have been sufficiently authenticated and would be admissible at trial as business records under Federal Rule of Evidence 803(6) and (8). Federal Rule of Evidence 803(6) requires that a record was: (1) made near the time of the event by, or from information transmitted by, someone with knowledge; (2) the record was kept in the course of a regularly conducted activity of the organization; (3) making the record was a regular practice of the activity; (4) these conditions are shown by the testimony of the custodian or another qualified witness; and (5) the opponent does not show that the source of information or the method or circumstances of preparation indicate a lack of trustworthiness. The reports and documents provided by Dahlby were all made by individuals with knowledge of the Incident or the relevant grievance proceedings, and written on standardized forms, which indicates a regular practice. The Use of Force Reports and grievance documents are a regular practice of correctional institutions. There is no indication or argument that the reports or the information provided therein are untrustworthy. Moreover, at trial, Dahlby could call the custodian of the records, or the individuals who prepared each of the documents, to testify that the records were made at or near the time by a person with knowledge, kept in the course of a regularly conducted organizational activity, and made as part of a regular practice of ManCI. Thus, these documents are admissible and can be reviewed by the Court.

### B. ODRC's Motion for Summary Judgment

ODRC argues that it is entitled to summary judgment in its favor because, as a state agency, it is not a proper defendant to a § 1983 suit; it asserts the Eleventh Amendment bars all of Plaintiff's claims for damages, injunctive, and declaratory relief. (ECF No. 36, PageID #290–91).

Plaintiff's opposition does not respond to this argument. The Court must address this argument first because it raises a challenge to the Court's subject matter jurisdiction.

The three remaining claims against ODRC are claims brought under § 1983.[4] (ECF No. 32, PageID #270). First, ODRC is not a proper defendant under § 1983. "Section 1983 creates liability for 'persons' who deprive others of federal rights under color of law. Only a 'person' faces liability under the statute." *Hohenberg v. Shelby Cty.*, 68 F.4th 336, 342 (6th Cir. 2023) (citing *Will v. Mich. Dep't of State Police*, 491 U.S. 58, 64, 109 S. Ct. 2304, 105 L. Ed. 2d 45 (1989)). ODRC, a state agency, is not a "person" within the meaning of § 1983. *See Vizcarrondo v. Ohio Dep't of Rehab. & Corr.*, No. 1:18-cv-1255, 2019 U.S. Dist. LEXIS 203181, at *16–17 (N.D. Ohio Nov. 22, 2019) (citing cases); *see also Peeples v. Ohio Dep't of Rehab. & Corr.*, 64 F.3d 663 (6th Cir. 1995) (table) (affirming the dismissal of a suit against ODRC because "a state is not a 'person' subject to suit under § 1983"); *Mason v. Eddy*, No. 1:18-cv-2968, 2019 U.S. Dist. LEXIS 134550, at *40 (N.D. Ohio Aug. 9, 2019) ("Nor is the ODRC, as an agency of the State of Ohio, a person subject to suit under § 1983." (citing *Regents of the Univ. of Calif. v. Doe*, 519 U.S. 425, 429, 117 S. Ct. 900, 137 L. Ed. 2d 55 (1997)); *Finfrock v. Ohio Dep't of Rehab. & Corr.*, No. 3:17-cv-1264, 2018 U.S. Dist. LEXIS 76748, at *11 (N.D. Ohio May 7, 2018) ("Additionally, the claims against the ODRC are not viable as it is not a person or legal entity capable of being sued under § 1983.").

Second, the claims against ODRC are barred by Eleventh Amendment immunity. The Eleventh Amendment grants sovereign immunity to the States, guaranteeing that "nonconsenting States may not be sued by private individuals in federal court." *Guertin v. Michigan*, 912 F.3d 907, 936 (6th Cir. 2019). Under the Eleventh Amendment, the State of Ohio and its agencies are immune from suit "unless the State's immunity has been abrogated by Congress or the State of

---

[4] They are Eighth Amendment excessive force, Eighth Amendment deliberate indifference, and First Amendment free exercise claims. (ECF No. 32, PageID #270).

8

Ohio has consented to be sued." *Hall v. Brazie*, No. 4:22-cv-2275, 2023 U.S. Dist. LEXIS 50997, at *4 (N.D. Ohio Mar. 24, 2023). "This immunity bars suits 'for injunctive, declaratory or monetary relief.'" *Morgan v. Bd. of Prof'l Resp. of the Supreme Court of Tenn.*, 63 F.4th 510, 515 (6th Cir. 2023) (citation omitted); *see also Otte v. Kasich (In re Ohio Execution Protocol Litig.)*, 709 F. App'x 779, 782 (6th Cir. 2017) (providing that the Eleventh Amendment bars all § 1983 claims against state agencies "regardless of the nature of the relief sought"). Ohio has not consented to be sued under § 1983 and Congress has not otherwise abrogated Ohio's Eleventh Amendment immunity with respect to § 1983 claims. *See Ladd v. Marchbanks*, 971 F.3d 574, 578 (6th Cir. 2020) ("Notably, 42 U.S.C. § 1983 does not abrogate the States' sovereign immunity."); *Smith v. DeWine*, 476 F. Supp. 3d 635, 652 (S.D. Ohio 2020) ("The State of Ohio has immunity for all claims against it because Ohio has not consented to suits in federal court nor has Congress abrogated Ohio's immunity under § 1983."). As a result, ODRC is immune from Plaintiff's suit.

Because ODRC is not amenable to suit under § 1983 and is also entitled to Eleventh Amendment immunity, the Court lacks subject matter jurisdiction over the claims against it. Accordingly, ODRC's motion for summary judgment (ECF No. 36) is **GRANTED** and all claims against ODRC are **DISMISSED**. The Court need not address ODRC's remaining arguments for dismissal.[5]

### C. Dahlby's Motion for Summary Judgment

#### 1. *Failure to Exhaust*

Defendant Dahlby also raises a threshold issue. He argues that he is entitled to summary judgment because Plaintiff failed to properly exhaust his administrative remedies before filing this action. (ECF No. 31, PageID #219–21). Specifically, he argues that Plaintiff failed to follow the

---

[5] ODRC also argues that it is entitled to summary judgment based on Plaintiff's failure to exhaust administrative remedies, qualified immunity, and the merits. (ECF No. 36, PageID #288–90, 293–97).

9

three-step prison grievance procedure provided for all ODRC inmates; he asserts Plaintiff filed an improper alternative grievance against the warden and then filed several untimely informal complaints. (ECF No. 31, PageID #220–21). Plaintiff contends that he has exhausted his administrative remedies. (ECF No. 37, PageID #584). As noted previously, only the Eighth Amendment excessive force claim remains pending against Dahlby. (ECF No. 32, PageID #270).

Under the Prison Litigation Reform Act ("PLRA"), "[n]o action shall be brought with respect to prison conditions under section 1983 of this title, or any other Federal law, by a prisoner confined in any jail, prison, or other correctional facility until such administrative remedies as are available are exhausted." 42 U.S.C. § 1997e(a). Exhaustion is mandatory and applies to all suits regarding prison conditions, no matter the wrong or the type of relief sought. *Porter v. Nussle*, 534 U.S. 516, 532, 122 S. Ct. 983, 152 L. Ed. 2d 12 (2002) ("[W]e hold that the PLRA's exhaustion requirement applies to all suits about prison life, . . . whether they allege excessive force or some other wrong."); *Booth v. Churner*, 532 U.S. 731, 741, 121 S. Ct. 1819, 149 L. Ed. 2d 958 (2001). The PLRA requires "proper exhaustion," which a prisoner satisfies "by taking advantage of each step the prison holds out for resolving the claim internally and by following the 'critical procedural rules' of the prison's grievance process to permit prison officials to review and, if necessary, correct the grievance 'on the merits' in the first instance." *Reed-Bey v. Pramstaller*, 603 F.3d 322, 324 (6th Cir. 2010) (quoting *Woodford v. Ngo*, 548 U.S. 81, 90, 126 S. Ct. 2378, 165 L. Ed. 2d 368 (2006)). "[I]t is the prison's requirements, and not the PLRA, that define the boundaries of proper exhaustion." *Jones v. Bock*, 549 U.S. 199, 218, 127 S. Ct. 910, 166 L. Ed. 2d 798 (2007). "[A] prisoner cannot satisfy the PLRA exhaustion requirement by filing an untimely or otherwise procedurally defective administrative grievance." *Scott v. Ambani*, 577 F.3d 642, 647 (6th Cir. 2009) (citing *Woodford*, 548 U.S. at 83).

The Ohio Administrative Code provides a three-step inmate grievance process for all inmates in the custody of ODRC. Ohio Admin. Code § 5120-9-31(J). First, the inmate must file an informal complaint with "the direct supervisor of the staff member responsible for the subject matter of the complaint" within 14 calendar days of the incident. *Id.* § 5120-9-31(J)(1). Second, the inmate must file a notification of grievance with the inspector of institutional services within 14 calendar days of any informal complaint response or waiver. *Id.* § 5120-9-31(J)(2). Finally, the inmate must file an appeal of the disposition of grievance with the office of chief inspector of ODRC within 14 days of disposition of the formal grievance. *Id.* § 5120-9-31(J)(3).

The record before the Court shows that Plaintiff did not properly exhaust his administrative remedies under the aforementioned procedure. The alleged excessive force for this claim (the Incident) occurred on February 3, 2020. (ECF No. 1, PageID #3–4). Thus, to properly exhaust the excessive force claim against Dahlby, Plaintiff needed to file an informal complaint (about the Incident and Dahlby's conduct) with Dahlby's direct supervisor by February 17, 2020. *See* Ohio Admin. Code § 5120-9-31(J)(1). But Plaintiff did not do so. In a sworn declaration, Dana Blakenship, the Institutional Inspector assigned to ManCI, stated that: (i) her job responsibilities include responding to the inmate grievance system at ManCI; (ii) she is an approved custodian of these grievances; and (iii) she has reviewed the relevant grievances filed by Plaintiff. (ECF No. 31-2, ¶¶ 2, 11). She states that Plaintiff never completed the three-step procedure for filing an excessive force grievance against Dahlby related to the Incident. (*Id.* ¶ 12). Instead, Plaintiff bypassed the informal complaint step and filed three "direct grievances" against the warden of ManCI with the Chief Inspector's Office on February 8th, 9th, and 10th. (*Id.* at PageID #231–32, 236–41).

11

Direct grievances are an alternative grievance process limited to claims against the warden or inspector of institutional services, which "must show that the warden or inspector of institutional services was personally and knowingly involved in a violation of law, rule or policy, or personally and knowingly approved or condoned such a violation." Ohio Admin. Code § 5120-9-31(L); (ECF No. 31-2, ¶ 8). These direct grievances were not made against Dahlby, nor could they serve to exhaust any excessive force claims against him. Before the 14-day deadline for filing an informal complaint, the three direct grievances against the warden were denied because they did not show that the warden had any personal or knowing involvement with the Incident. (ECF No. 31-2, PageID #236, 238, 240). These resolution notices even informed Plaintiff that his complaint about the Incident should "instead be filed as an informal complaint with the area supervisor." (*Id.* at PageID #236). However, Plaintiff did not file any informal complaint naming Dahlby (or describing his actions with relation to the Incident) by the February 17, 2020 deadline.

Plaintiff filed an "Informal Complaint Resolution" on June 17, 2020, an ODRC employee filed a grievance on Plaintiff's behalf on September 16, 2020,[6] and Plaintiff filed an informal complaint on April 4, 2021—with all these filings related to the Incident and submitted months after the 14-day informal complaint deadline. (ECF No. 1-1, PageID #12; ECF No. 32-1, PageID #231–34, 242–47). These filings were all denied as untimely, with those dispositions later affirmed on appeal. (ECF No. 32-1, PageID #232–34, 244, 247). The undisputed evidence establishes that Plaintiff did not file a timely informal complaint related to the Incident and therefore he failed to comply with the first step of Ohio's grievance process.

Plaintiff alternatively argues that the exhaustion requirement should be excused because it was nearly impossible to file a proper and timely grievance due to the injuries he suffered from

---

[6] This grievance is the sole evidence that Plaintiff cites to establish he exhausted his administrative remedies. (ECF No. 37, PageID #584).

the Incident and being denied access to grievance materials and procedures based on prison policy. (ECF No. 37, PageID #584). Plaintiff attests in a sworn declaration that his access to the grievance process was limited to the Jpay Kiosk, he was only allowed to log in to the kiosk for 10 to 15 minutes per day, his injuries prevented him from walking to the kiosk, and he was denied access to the grievance process after being moved to the medical infirmary on February 11, 2020. (ECF No. 37-1). Defendants respond that Plaintiff's declaration does not actually state that he was unable to use the grievance process, and Plaintiff's argument is belied by his use of the grievance process on February 8th and 9th of 2020. (ECF No. 42-1, PageID #617).

There are three circumstances where administrative remedies (grievance procedures) are considered unavailable to prisoners for purposes of administrative exhaustion:

> (1) "when (despite what regulations or guidance materials may promise) it operates as a simple dead end—with officers unable or consistently unwilling to provide any relief to aggrieved inmates"; (2) when "some mechanism exists to provide relief, but no ordinary prisoner can discern or navigate it" because it is "so opaque" or "so confusing"; and (3) "when prison administrators thwart inmates from taking advantage of a grievance process through machination, misrepresentation, or intimidation."

*Lamb v. Kendrick*, 52 F.4th 286, 292–93 (6th Cir. 2022) (quoting *Ross v. Blake*, 578 U.S. 632, 643–44, 136 S. Ct. 1850, 195 L. Ed. 2d 117 (2016)). Plaintiff essentially argues that the administrative remedies were unavailable to him because he was physically incapable of filing a timely informal grievance. No binding authority addresses whether a prisoner's own physical incapacity can excuse the administrative exhaustion requirement. The Sixth Circuit has explained: "Our circuit has no published opinion on whether the availability of remedies under the PLRA requires an analysis of an inmate's individual capacities, but we have, in unpublished opinions confronted the issue." *Coopwood v. Wayne Cty.*, 74 F.4th 416, 424 (6th Cir. 2023) (citing *Braswell v. Corr. Corp. of Am.*, 419 F. App'x 622, 625 (6th Cir. 2011); *Williams v. White*, 724 F. App'x

13

380, 383 (6th Cir. 2018); *Doss v. Corizon Med. Corp.*, No. 21-1423, 2022 U.S. App. LEXIS 6683, 2022 WL 1422805, *2 (6th Cir. Mar. 15, 2022)). At the same time, other circuits have directly addressed this issue and held that a prisoner's physical incapacity can be a valid reason to excuse the administrative exhaustion requirement. *See, e.g.*, *Smallwood v. Williams*, 59 F.4th 306, 314 (7th Cir. 2023); *Smith v. Andrews*, 75 F.4th 805, 809–09 (8th Cir. 2023); *Eaton v. Blewett*, 50 F.4th 1240, 1245 (9th Cir. 2022); *Rucker v. Giffen*, 997 F.3d 88 (2d Cir. 2021). No matter a prisoner's physical capabilities, he is still required "to make affirmative efforts to comply with the administrative procedures and analyze whether those efforts to exhaust were sufficient under the circumstances." *Risher v. Lappin*, 639 F.3d 236, 240 (6th Cir. 2011) (cleaned up).

The Court finds that the administrative remedies here were not "unavailable" to Plaintiff. Despite Plaintiff's contention that he was physically unable to utilize the prison grievance system, he managed to file several grievances against the warden related to the Incident during the 14-day window for filing an informal grievance related to the Incident. (ECF No. 31-2, PageID #236–40). This undermines Plaintiff's arguments that he was physically unable to avail himself of the prison's grievance procedures. As for Plaintiff's argument that he was prevented from accessing the grievance procedures after being placed in the medical infirmary on February 11, 2020, he has provided no corroborating evidence to support this contention. General, unsupported allegations of this kind do not excuse Plaintiff from satisfying the exhaustion requirement under the PLRA. *Boyd v. Corr. Corp. of Am.*, 380 F.3d 989, 997–98 (6th Cir. 2004).

Based on the record presented, Dahlby is entitled to judgment as a matter of law. There is no genuine issue of fact that Plaintiff failed to properly exhaust his Eighth Amendment excessive force claim against Dahlby through Ohio's prison grievance procedure. *See Woodford*, 548 U.S. at 90 (requiring "proper exhaustion" of administrative remedies under the PLRA, such that a

14

prisoner must use "all steps that the [prison] holds out"); *Lamb v. Kendrick*, 52 F.4th 286, 294 (6th Cir. 2022) (holding that a defendant failed to exhaust his administrative remedies when he failed to satisfy one of the steps in Ohio's prison grievance procedure). Accordingly, Dahlby's motion for summary judgment (ECF No. 31) is **GRANTED** and the excessive force claim against him is **DISMISSED**.

### 2. *Lack of Personal Involvement – Lack of Liability*

Even though Plaintiff's claim against Dahlby is barred by his failure to exhaust his administrative remedies, the Court will alternatively address Dahlby's arguments for summary judgment on the merits. Dahlby argues that the Eighth Amendment excessive force claim (the sole remaining claim against him) should be dismissed because evidence establishes that he had no personal involvement in the alleged actions underlying the claim and he was not present at ManCI during the time of the Incident. (ECF No. 31, PageID #216–19). Plaintiff responds that the evidence provided by Dahlby does not prove he was not at ManCI the day of the Incident and video evidence contradicts his argument. (ECF No. 37, PageID #583). Dahlby replies that, not only does Plaintiff not explain how the video footage proves Dahlby was present at the Incident, but the video referenced by Plaintiff "does not show the physical exchange, nor does Dahlby appear in the video at any point." (ECF No. 42-1, PageID #612 n.3).

The evidence provided by Dahlby establishes that he is entitled to summary judgment on the Eighth Amendment excessive force claim asserted against him. In a sworn declaration, Dahlby attests that he was neither working nor present at ManCI on February 3, 2020 (the date of the Incident). (ECF No. 31-1, PageID #225–26). He also provides a copy of his timesheet showing

15

that he was not scheduled and did not work on February 3, 2020.[7] (*Id.* at PageID #227). In sworn declarations by ManCI Correctional Officers Billy Morgan and Trevor Zinn, they both attest that: (i) they were working at ManCI at the time of the Incident; (ii) they witnessed the Incident; and (iii) Dahlby was not present and did not participate in the Incident. (ECF No. 31-3, PageID #249–50; ECF No. 31-4, PageID #252).

A Supervisor's Use of Force Summary Report for the Incident, created on the same day, indicates that Lieutenant William Gifford ("Lt. Gifford") was the ManCI employee who used force against Plaintiff on February 3, 2020. (ECF No. 31-5, PageID #257). The summary states that: (i) Plaintiff was placed in his cell and refused to comply with orders to strip given by "officers in the area and Lt. Stewart"; (ii) Captain Lynch sent Lt. Gifford to the area; (iii) Lt. Gifford gave a direct order to strip and warned Plaintiff that OC spray would be used if he did not comply; and (iv) Lt. Gifford deployed OC spray against Plaintiff. (*Id.*). It also states that Lieutenant Michael Stewart and Corrections Officers Trevor Zinn, David Moore, Billy Morgan, and Tyrell White were all witnesses to Lt. Gifford's use of force against Plaintiff. (*Id.*). The Use of Force Reports provided by Lt. Gifford, as well as the other witnesses, all corroborate the "Summary Report," and uniformly state that Lt. Gifford was the ManCI employee involved in the Incident. (*Id.* at PageID #258, 260–64). More importantly, no report references Dahlby or otherwise indicates that he was present or took any actions related to the Incident. An incident report from Nurse Jesse Glass on February 3, 2020, further corroborates that Lt. Stewart and Lt. Gifford were the ManCI employees involved with the Incident and that it was Lt. Gifford who deployed the OC spray against Plaintiff. (*Id.* at PageID #265, 267).

---

[7] Plaintiff contends that this evidence only demonstrates that Dahlby was not compensated for working on February 3, 2020, (ECF No. 37, PageID #583). The Court finds this argument unpersuasive, particularly in light of the other evidence corroborating Dahlby's lack of involvement in the Incident.

Plaintiff's opposition cites an ODRC security video from ManCI during the Incident that was delivered to Plaintiff as part of Defendants' initial disclosures as evidence that contradicts Dahlby's argument. (ECF No. 37, PageID #583 (citing ECF No. 38-1, PageID #600)). Plaintiff does not identify what specific argument he is referring to, and he does not explain how the security video contradicts this unspecified argument. He also does not reference any specific time frame within the video. Pursuant to the Court's March 10, 2025 Order (ECF No. 39), Defendants filed a copy of the video footage referenced in Plaintiff's opposition. (ECF No. 44). Having reviewed the security video, the Court notes that there is no footage of the Incident and the physical interaction between Plaintiff and ManCI corrections officers. (*See id.*). Although the Court itself has no ability to identify if Dahlby appears in the security video, the footage does not establish that Dahlby had any personal involvement in Plaintiff's allegations of excessive force related to the Incident. Moreover, Plaintiff's opposition did not actually state whether the video showed the presence of Dahlby during the Incident, while Defendants explicitly state that Dahlby does not "appear in the video at any point." (ECF No. 42-1, PageID #612 n.3). Thus, Plaintiff has not demonstrated that that the security video contradicts the myriad of evidence provided by Dahlby demonstrating he was not present at ManCI during the Incident.

The evidence before the Court establishes that Dahlby was not scheduled to work at ManCI on the day of the Incident, he was not present during the Incident, and he had no personal involvement in the use of excessive force alleged in the complaint. Without any Rule 56 evidence to the contrary, and Plaintiff failing to put forward any alternate theory of liability, the Court finds that no reasonable jury could find that Dahlby is liable for excessive force against Plaintiff and Dahlby is entitled to summary judgment in his favor on this alternative ground. Because the Court has determined that the Eighth Amendment claim against Dahlby is barred by Plaintiff's failure to

17

exhaust administrative remedies, and also fails on the merits, the Court declines to address Dahlby's additional arguments on qualified immunity. (ECF No. 31, PageID #221–23).

## IV. CONCLUSION

For the foregoing reasons, Dahlby's motion for summary judgment (ECF No. 31) and ORDC's motion for summary judgment (ECF No. 36) are both **GRANTED**. Plaintiff's remaining claims are **DISMISSED**.

**IT IS SO ORDERED.**

Date: March 31, 2025

_____
**CHARLES E. FLEMING**
**U.S. DISTRICT COURT JUDGE**